(C.D. 2194)

C. J. TOWER & SONS OF BUFFALO, N.Y. *v.* UNITED STATES

United States Customs Court, Third Division

(Decided July 29, 1960)

*Barnes, Richardson & Colburn* (*Joseph Schwartz* and *Paul J. Gavin* of counsel) for the plaintiff.

*George Cochran Doub,* Assistant Attorney General (*Henry J. O'Neill,* trial attorney), for the defendant.

Before JOHNSON, DONLON, and RICHARDSON, Judges; JOHNSON, J., dissenting

DONLON, Judge: The issue here is whether certain grass seed, imported from Canada, is red top seed, as it was described in the

entry papers; and if it is red top seed, then whether it is *eo nomine* provided for as bent-grass seed. The collector liquidated the entry at the rate provided in paragraph 763, as modified, for "bent-grass seed (genus agrostis)."

Plaintiff is the broker. The importer, Craver-Dickinson Seed Co., concedes that this seed is of the *genus agrostis*, but contends that within that *genus* it is properly classified for tariff purposes as red top seed and not as bent-grass seed.

In view of the botanical aspect of the problem, it is not particularly helpful that plaintiff's sole witness was one who, notwithstanding 30 years' experience as a seed salesman, was without qualification to throw light on one of the basic problems of the litigation. There was available no specimen of the imported seed. It had all been sold. The witness was not asked whether the seed of the importation was red top seed. Plaintiff's counsel asserted that it was red top seed, "there seems to be no reasonable doubt about that" (R. 5); but it is well established that assertions of counsel, however vehement, are not proof of the facts asserted. We find in the record no stipulation that the seed is "red top."

The testimony of plaintiff's witness was chiefly as to the respective uses of the grass seeds known in the seed trade as bent-grass and red top. Bent-grass is an expensive seed, used for golf courses and in mixtures for lawns. Red top is a much cheaper seed, used by farmers to grow forage crops. It is also used in lawn seed mixtures. In lawn seed mixtures, red top is the "nurse crop," the seed of the mixture which will germinate quickly (5 to 6 days) and provide a cover, or protection, from the sun, to give the more slowly germinating blue grass of the mixture a chance to grow. The witness did not know of any use of bent-grass as forage seed, which he said was the chief use of red top seed.

From the Summary of Tariff Information, 1929, and the proceedings in Congress on the enactment of the Tariff Act of 1930, as well as the 1948 Summaries of Tariff Information, it appears not only that there are two different grass seeds of commerce known as bent-grass and as red top, but also that there was an effort to induce Congress to bring red top *eo nomine* within the higher tariff provision for bent-grass. This Congress did not do.

While the invoices describe the seed as red top, and they are in evidence, such documents are self serving and do not suffice to overcome the presumption that the collector has found every fact requisite to his classification of the imported merchandise. The sole evidence before us that identifies this merchandise as red top seed, is a letter from the United States Department of Agriculture, Federal Seed Laboratory, College Farm, New Brunswick, N.J., addressed to the importer, with copy to the collector, which copy is a part of the

official papers that are in evidence. The circumstances of this communication are significant, and they lend probative value to it.

The laws of the United States require that the Secretary of the Treasury shall deliver to the Secretary of Agriculture samples of seed that is being imported into the United States. The purpose of this requirement is not only to ascertain whether the seed complies with the provisions of the Federal Seed Act, but also to ascertain whether the seed is correctly labeled. Section 302(a) of title III, 53 Stat. 1275, provides as follows:

> Sec. 302. (a) The Secretary of the Treasury shall deliver to the Secretary of Agriculture, subject to joint rules and regulations prescribed under section 402 of this Act, samples of seed and screenings which are being imported into the United States, or offered for import, giving notice thereof to the consignee, and if it appears from the examination of such samples that any seed or screenings offered to be imported into the United States are subject to the provisions of this title and do not comply with the provisions of this title, or if the labeling of such seed is false or misleading in any respect, such seed or screenings shall be refused admission, and the Secretary of the Treasury shall refuse delivery to the consignee, who may appear, however, before the Secretary of Agriculture and show cause why the seed or screenings should be admitted.

The seed of this importation reached Buffalo by truck on August 14, 1957. The official customs notification, as required by section 302(a), *supra*, was given by the collector to this importer that same day, as follows:

> A sample of your importation . . . has been taken by the Customs Service and forwarded to the United States Department of Agriculture for examination under the provisions of the Federal Seed Act of August 9, 1939. Until further advised, seed must be held intact subject to redelivery to Customs custody, if demanded, as provided in the bond given at the time of entry.

Two weeks later, under date of August 28, 1957, the Department of Agriculture reported to the importer, as follows:

> The following-described shipment is admitted under the Federal Seed Act and the regulations for its enforcement (T.D. 50071, T.D. 50458, T.D. 51363, and T.D. 52347):

| | |
|---|---|
| Entry No. | 3465–Buffalo |
| Invoice No. | — |
| Federal Seed Act No. | NB 1891 |
| Kind of seed | Redtop |
| Consignor | A. E. McKenzie Co., Ltd., Toronto, Ont. |
| Importer of record | C. J. Tower & Sons, 128 Dearborn St., Buffalo, N.Y. |
| Ultimate consignee | Craver-Dickinson Seed Co. |
| Distinguishing mark of lot | CDC |
| Gross weight of lot | 2529# |
| Total number of bags in lot | 26 |
| Steamer | Truck |
| Country of origin | Canada |

This letter refers to the same entry number as appears in the other official papers which are of record. It was sent by the collector to the court with other relevant papers.

It will be noted that the Department of Agriculture not only passed the seed under the Federal Seed Act, but described the seed as red top, which passed the importation as being correctly labeled.

Defendant argues that Department of Agriculture standards do not control customs procedure, and as to this there can be no doubt. The principle is too well established to require citation of authorities. However, a report of the Department of Agriculture may be helpful in establishing the identity of imported merchandise, leaving to customs procedure the appropriate tariff classification of the merchandise thus identified. *Gallagher & Ascher Co.* v. *United States*, 24 Cust. Ct. 1, C.D. 1199, and cases therein cited.

The Department of Agriculture has identified this seed as red top, and has so reported both to the importer and to the collector. If the seed labeled as red top had been found by the Department of Agriculture to be, in fact, something else, the collector had a clear duty, under the statute, to refuse delivery to the importer. He did not refuse delivery, but released it on identification of the seed by the Department of Agriculture as red top. This rebuts the presumption that the collector found every fact requisite to classification of this seed as bent-grass. Plaintiff has overcome the presumption of correctness attaching to the collector's classification, and has made a *prima facie* case for classification of this imported seed as red top.

Is red top a grass and forage crop seed, not specially provided for, under paragraph 763, as modified?

Defendant appears to argue that all seed of the *genus agrostis* is *eo nomine* provided for as bent-grass in paragraph 763, and not merely that seed which is known to commerce as bent-grass. Plaintiff argues, to the contrary, that only that seed of the *genus agrostis* which is known as bent-grass is *eo nomine* provided for under that name, and that other seeds of the *genus agrostis*, including the seed known commercially as red top, are not within the bent-grass *eo nomine* provision.

*Agrostis* is the name for all grasses. Paxton's Botanical Dictionary, page 19. *Agrostis* is a Greek word derived from *agros*, meaning field.

If by the parenthetic insertion of the inclusive *genus* name after the particular grass *eo nomine* provided for, a grass known to commerce as bent-grass and imported as such, as the information in the 1929 tariff summary shows, Congress intended that every variety of the *genus* was thus *eo nomine* provided for, it is difficult to understand what Congress also intended by the omnibus provision for "all other grass seeds not specially provided for." This is the dilemma to which

defendant's argument leads: That in the single bent-grass provision, by virtue of the parenthetical identification of bent-grass as included in the *agrostis* family, all grass seeds are thereby *eo nomine* provided for, and there is no grass seed left that is unprovided for.

We are required to give effect to every part of the congressional enactment. We may not infer that Congress intended that all grass seed was included within the *eo nomine* bent-grass provision and that there was no seed of the grass family that was not specially provided.

The record here shows that this is the red top seed of commerce and that Congress was aware of the differences commercially between the seed known as bent-grass and that known as red top.

We are not unmindful of the representations made to Congress as to the difficulty of identifying bent-grass and red top, and the risk of confusion. This is supported by the testimony of plaintiff's witness, who could not identify samples, on sight or by feeling the seed, as being surely bent-grass and not red top, or *vice versa*. If such arguments did not move Congress to change tariff policy, they are wasted on us, for we do not make tariff policy. It may be presumed that the scientists of the Department of Agriculture, to whom is entrusted the statutory responsibility of identifying imported seed, have better means of doing so than mere visual examination or finger sensation, and they have said that this is red top seed.

Plaintiff's claim that this seed should be dutiable as grass seed, not specially provided for, at 0.9 cent per pound, under paragraph 763 of the Tariff Act of 1930, as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, T.D. 54108, is sustained.

Judgment will enter accordingly.

DISSENTING OPINION

JOHNSON, Judge: For the reasons stated below, I find I am unable to agree with the conclusion reached by my colleagues.

This case involves the classification of seed described as "Red Top" or as "Red Top Seed (Genus Agrostis)," assessed by the collector at 15 cents per pound under paragraph 763 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, T.D. 51802, as "bent-grass (genus agrostis)." It is claimed to be dutiable at 0.9 cent per pound under said paragraph, as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, T.D. 54108, as a grass or forage crop seed, not specially provided for.

At the trial, counsel for the plaintiff conceded that the merchandise belonged to the species known as genus *agrostis* but claimed that it was not bent-grass and was, therefore, not covered by the provision for "bent-grass (genus agrostis)." A certificate of the United States

Department of Agriculture, received in evidence as part of the official papers, dated August 28, 1957, signed by R. C. Hess, marketing specialist in the Federal Seed Laboratory, designates the seed as "Redtop."

The only witness testified that the term "genus *agrostis*" meant bent-grass or red top; that they both fell within that genus, but that they were used somewhat differently. He said that red top seed is used in a hay crop mixture and in lawn mixtures, but bent-grass seed is used only in lawn mixtures; that there is a commercial distinction and one is not sold as the other; and that red top is *agrostis alba*. The witness was unable to determine from inspection whether certain seeds shown to him were bent-grass or red top seed.

Bent-grass is defined in Webster's New International Dictionary as—

Any of numerous stiff wiry grasses, as the beach grass (*Ammophila arenaria*), the dog's-tail grass *Cynosurus cristatus*, etc.; specif., in America, *Agrostis stolonifera* and *A. vulgaris* and their allies.

*Agrostis* is defined in said dictionary as—

*Bot.* A large and widely distributed genus of grasses known as *bent grasses.* * * * Some, as *A. stolonifera major*, the redtop, are valuable pasture grasses.

Funk & Wagnalls New Standard Dictionary defines bent-grass as—

Any one of various stiff wiry grasses, especially of the genus *Agrostis*, or, in Australia, also the genus *Deyeuxia.*

In a long list of grasses with botanical names, red top is designated as *agrostis alba* and bent-grass as *agrostis.*

The following appears in The Columbia Encyclopedia (p. 186):

**bent grass,** any species of the genus *Agrostis*, chiefly slender, delicate grasses, many of which are cultivated for pasture, hay, lawn, and turf purposes. Important kinds of bent grasses include redtop (sometimes called herd's-grass or fiorin), much used for forage and pasture; creeping bent, a lawn and putting-green grass that becomes established in a short time when stolons are planted and is useful in acid soil; and Rhode Island bent, a lawn and pasture grass.

Collier's Encyclopedia, volume 3, page 343, states:

**Bent grass** is the common American name of various species of *Agrostis*, including several important pasture, meadow, and lawn grasses. The red-top, *A. alba*, is a European species widely used for pastures and hay in the northern United States, where it is naturalized. * * *

See also Encyclopedia Americana, volume 3, page 525, and New International Encyclopaedia, volume 3, page 148, which refer to red top as the common bent-grass. It is pointed out in the latter that the species *agrostis alba*, *agrostis vulgaris*, and *agrostis stolonifera* are often separated, although the last two are little more than varieties of *agrostis alba.*

The legislative history of the provision for "bent-grass (genus agrostis)" shows the following: When the Tariff Act of 1930 was being prepared by Congress, a letter from G. R. Hyslop, agronomist,

Oregon Experiment Station, was received by the Committee on Ways and Means of the House of Representatives (Tariff Readjustment 1929, Hearings before the Ways and Means Committee, House of Representatives, vol. 7, p. 4865). It states (p. 4867):

Creeping bent grasses: As you have been advised by different bent grass seed growers, there is a strong demand for a high tariff on the bent grasses and similar grasses. * * * We therefore urge the 40-cent tariff. I desire to urge that the item call for creeping bent grass, other bent grasses, and red top, since those items are not included in the Federal seed act, and unscrupulous dealers would ship in the bent grass under the name of red top, which has very similar seed, and the grower of the bent grass would not be protected. This would, of course, work no hardship on the red top people since we are normally an exporting Nation for red top and the domestic supply normally fixes the price.

In a letter from A. E. Engbretson, president of the Engbretson Seed Co., also received by the Ways and Means Committee (*op. cit.*, p. 4874), it is stated:

The present tariff is $0.02 where it ought to be $0.40. My suggestion would be that all seed of the Agrostis species be included. We do not import redtop, which is a common grass in this country. If redtop, which is one member of the Agrostis species, is left at $0.02, all of our bent grass will be imported under that name. The only seed of the Agrostis species that is imported are the varieties of bent grass.

The House bill imposed a duty of 10 cents per pound on bent-grass seed. A Senate amendment added the botanical name "genus agrostis" and increased the rate to 40 cents per pound.

The question before the court is what Congress intended by the term "bent-grass (genus agrostis)." "The meaning of a tariff term is presumed to be the same as its common or dictionary meaning in the absence of evidence to the contrary." *August Bentkamp* v. *United States*, 40 C.C.P.A. (Customs) 70, 78, C.A.D. 500. The dictionary definitions quoted, *supra*, include within the term "bent-grass" any of numerous stiff wiry grasses, especially, in America, of the genus *agrostis*. Red top not only belongs to the genus *agrostis*, but is included by the authorities among the varieties of bent-grass.

Congress, in adding the words "genus agrostis" to the provision for bent-grass, identified the merchandise intended to be covered as bent-grass seed of the genus *agrostis*. No other qualifying words were used which would limit the provision to creeping bent, or Rhode Island bent, or brown bent, or any particular kind or kinds of bent-grass. Thus, all varieties of bent-grass of the genus *agrostis* are included. Since red top is known as a variety of bent-grass and belongs to the genus *agrostis*, it is covered by the provision for "bent-grass (genus agrostis)."

Plaintiff claims, however, that the legislative history demonstrates that Congress did not intend to include all grass seed of the genus *agrostis* under the provision for "bent-grass (genus agrostis)." Prior

to the enactment of the Tariff Act of 1930, bent-grass was classified under the general provision for other grass seeds, not specially provided for. Paragraph 761, Tariff Act of 1922. In view of the demand by domestic bent-grass growers, bent-grass seed was specifically provided for in the Tariff Act of 1930 at a much higher rate of duty. The purpose of the provision was obviously to protect American growers from unequal competition with foreign grown seed. The testimony in the instant case and the statements made at congressional hearings indicate that it is difficult to distinguish between red top seed and other bent-grass seed. It was for that reason that Congress was urged to include red top under the higher duty provisions, it being noted that red top seed is not normally imported, but that unscrupulous dealers might import other bent-grass seed as red top.

In view of the common meaning of the term "bent-grass" and the statements made at congressional hearings, I am of opinion that Congress intended by the term "bent-grass," qualified only by the words "genus agrostis," to include all varieties of bent-grass within said genus, and that such provision was intended to cover the variety known as red top.

While it may be, as stated in Paxton's Dictionary of Botany, that *agrostis* is the Greek name for all grasses, it is well known that there are thousands of distinct species of grasses, belonging to many genera, all grouped in the family *gramineae*. Collier's Encyclopedia, volume 9, page 271; Encyclopaedia Britannica, volume 10, page 648; Gray's Manual of Botany; Encyclopedia Americana, volume 13, page 153; The Columbia Encyclopedia, page 807. The tariff act itself lists a number of kinds of grasses, and many are listed in Funk & Wagnalls New Standard Dictionary and in the Code of Federal Regulations, volume 7, sec. 201.2(h). The botanical names of these indicate that they do not all belong to the genus *agrostis*.

Therefore, while the provision for "bent-grass (genus agrostis)" in paragraph 763 of the Tariff Act of 1930 does not and could not include all grasses, it does cover all bent-grasses belonging to the genus *agrostis*.

Although the Summaries of Tariff Information, 1948, volume 7, part 5, list bent-grass seed separately and include red top under grass and forage crop seeds, not specially provided for, this summary is not necessarily controlling in determining the intent of Congress in enacting the statute. *Dodge & Olcott, Inc.* v. *United States*, 45 C.C.P.A. (Customs) 113, C.A.D. 683. In the instant case, for the reasons indicated, I am of opinion that the statements in the summary as to bent-grass seed and red top seed do not reflect the intent of Congress as to their classification.

While the witness in this case stated that there was a commercial distinction between bent-grass and red top, his testimony is insufficient to establish a commercial meaning different from the common meaning, which includes red top as a variety of bent-grass.

On the record presented, I would sustain the collector's classification of the within merchandise as "bent-grass (genus agrostis)," dutiable at 15 cents per pound under paragraph 763 of the Tariff Act of 1930, as modified.